# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                                )
                                                     )          **Case No. 11-20736-TLM**
**JOHN WALTER HYATT and**                            )
**SHIRLEY MICHELLE HYATT,**                          )          **Chapter 7**
                                                     )
                 **Debtors.**                        )
_____ )
                                                     )
**GENE HYATT, Successor Trustee**                    )
**of THE HYATT REVOCABLE**                           )
**LIVING TRUST,**                                    )
                                                     )
                 **Plaintiff,**                      )
                                                     )          **Adv. No. 11-07023-TLM**
**v.**                                               )
                                                     )
**JOHN WALTER HYATT and**                            )
**SHIRLEY MICHELLE HYATT,**                          )
                                                     )
                 **Defendants.**                     )
_____ )

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

      Before the Court in this adversary proceeding is a motion for summary

judgment filed by creditor Gene Hyatt, as successor trustee of The Hyatt

Revocable Living Trust (the "Trust"), seeking a determination that the Trust's

claim, established by an April 29, 2010, California state court order, is

MEMORANDUM OF DECISION - 1

nondischargeable under § 523(a)(2) and (4), Adv. Doc. No. 10 ("Summary

Judgment Motion").[1]   Debtors John and Shirley Hyatt oppose the Motion.

On November 1, 2011, this Court heard argument on the Summary

Judgment Motion in conjunction with argument and evidence concerning the

motion of the chapter 7 trustee, J. Ford Elsaesser ("Bankruptcy Trustee"), to

dismiss Debtors' bankruptcy case and the Trust's motion for relief from the

automatic stay of § 362(a), both filed in Debtors' chapter 7 case, Case No. 11-

020736-TLM.[2]   In a separate Memorandum of Decision, the Court granted stay

relief to the Trust to proceed with collection on its Idaho judgment lien against

Debtors' Kootenai County real property at 11341 Church Road, Rathdrum, Idaho

(the "Property"), and denied the dismissal motion of the Bankruptcy Trustee.  *See*

Doc. No. 58 ("Decision").[3]  The instant Decision addresses the Trust's Summary

Judgment Motion.

---

[1]   Unless otherwise indicated, all statutory citations in this Decision are to the provisions
of the Bankruptcy Code, Title 11, U.S. Code §§ 101-1532.  Additionally, citations to the
"Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, and those to the "Civil
Rules" are to the Federal Rules of Civil Procedure.

[2]   Citations in this Decision to matters of record in the chapter 7 case will be to "Doc. No.
__," while those to matters of record in this adversary proceeding will be to "Adv. Doc. No. __."

[3]   Stay relief allows the Trust to conclude the process of execution, enforcing its
judgment against the Property in Kootenai County.  This involves collection of a secured debt.  In
contrast, this adversary proceeding concerns whether any portion of the debt that is unsecured
will be found nondischargeable and thus be collectible from Debtors or their post-bankruptcy
property.

MEMORANDUM OF DECISION - 2

## BACKGROUND AND FACTS

### A.      The Decision

This Court's Decision regarding the stay relief and dismissal motions sets

forth at some length the nature and history of litigation between Debtors, who here

and in all other cases have appeared *pro se*, and the Trust.  *See* Doc. No. 58 at 5-

23.  That discussion is incorporated fully herein by this reference and is not

repeated.  However, portions of it are summarized.

Debtor John Hyatt and his brother, Gene, are two of four children of

George C. Hyatt ("George") and Dorothy Roman Hyatt ("Dorothy").  George and

Dorothy were the original settlors of the Trust, executing the first Trust

documentation in November, 1990.  George died in 1991.  An amendment, which

Debtors contested, was later made to the Trust documentation by Dorothy on

December 12, 2007.

### 1.      California litigation

Gene filed a conservatorship action regarding Dorothy in the California

state courts in February 2008, and a temporary conservator for Dorothy was

appointed on February 6, 2008.[4]  Amendments were made to the Trust by Dorothy

on February 22, 2008, at Debtors' instigation.

Dorothy died on August 8, 2008.  Several days later, a probate matter was

---

[4]  Case No. VP011852, Superior Court of California, Los Angeles County.

MEMORANDUM OF DECISION - 3

commenced.[5]  Debtors contend that Gene filed a false will of Dorothy in the probate with the intent to supercede or defeat administration of the Trust under the February 2008 amendments.

In October 2009, real property owned by Dorothy located at 6560 Ianita, Lakewood, California (the "Ianita Property"), was sold by the Trust for $365,000.[6] Prior to its sale, the Ianita Property had been used to secure a line of credit, on which John Hyatt received $185,000.

Following contested litigation, the California Superior Court issued a decision on February 26, 2010, in Case No. VP012044 (*In re The Hyatt Revocable Living Trust*), finding, among other things, that John Hyatt's taking of $185,000 through the line of credit on the Ianita real property did not constitute a loan and was "in bad faith and wrongful;" that John Hyatt "wrongfully" took several personal items of Dorothy that were assets of the Trust; that John and Michelle Hyatt attempted "to scare, intimidate and influence Dorothy;" and that good cause existed for removal of John Hyatt as trustee of the Trust.  Based on these findings, the court removed John Hyatt as trustee of the Trust and appointed Gene Hyatt as the successor trustee, ordered John Hyatt to return to the Trust the personal items

---

[5]  *In re the Matter of Dorothy Hyatt*, Case No. VP012079, Superior Court of California, Los Angeles County.

[6]  This was one of two parcels of property Dorothy owned; the other was located at 4946 Knoxville Ave., Lakewood, California.

MEMORANDUM OF DECISION - 4

he had wrongfully taken and the sum of $185,000, and

awarded "double damages" pursuant to California Probate Code § 859 on the

wrongful taking of funds from the home equity line.[7]

The February 2010 Decision was confirmed and implemented through a

later "Order on Probate Code § 850 Petition for Return of Trust Property and

Damages Filed by Gene Hyatt" entered on April 29, 2010 (hereinafter the "April

2010 Order").  The April 2010 Order also calculated the "double damages" ruling:

> The court finds that pursuant to Probate Code § 859, that John
> Walter Hyatt acted in bad faith in the taking of the property of the trust
> including the $185,000.  Therefore the Court orders John Walter Hyatt,
> in addition to the return of the $185,000.00, to pay double damages in
> the amount of $370,000.00 forthwith.  John Walter Hyatt is ordered to
> pay the successor trustee, Gene Hyatt, on behalf of the Hyatt Revocable
> Living Trust a total of $555,000.00 ($185,000.00 plus ($185,000.00 X
> 2)) forthwith.

Adv. Doc. No. 10-5 at 3.

The April 2010 Order was not appealed and is final.

The Summary Judgment Motion relies, in part, on these rulings and

determinations made by the California court.  *See* Adv. Doc. No. 10-1 at 2 ¶1

("Statement of Undisputed Facts in Support of Motion for Summary Judgment");

Adv. Doc. No. 10-2 at 2, 6-7 ("Memorandum in Support of Motion for Summary

---

[7]  *See* "Decision After Hearing" dated February 26, 2010, in *In re The Hyatt Revocable
Living Trust*, Case No. VP012044, Los Angeles Superior Court, Commissioner Robert S. Wada
presiding (hereafter the "February 2010 Decision").  This decision followed a December 10,
2009, court trial.

MEMORANDUM OF DECISION - 5

Judgment").

### 2.    Idaho litigation

In July 2010, the Trust caused a certified copy of the April 2010 Order to be filed as a foreign judgment in the District Court of the First Judicial District, State of Idaho, Kootenai County.[8]  The judgment was thereafter recorded in the County's real property records on August 10, 2010.  A writ of execution was issued on the judgment in August 2010.  Debtors' counterclaim for injunctive relief to stay execution on the Trust's judgment was denied in September 2010.

A second Idaho case, Case No. CV 2010-8180, was filed and consolidated with Case No. CV 2010-6541.  Following further hearings, the court ruled that the transfers of Debtors' Kootenai County real property – first by Debtors to the "Church Road Trust," and subsequently by the Church Road Trust to Debtors' daughter – were fraudulent under Idaho law and therefore avoided; that the Property belonged to Debtors; and that Debtors and their marital community were jointly and severally liable for satisfaction of the domesticated judgment.  An Amended Partial Judgment and I.R.C.P. 54(b) Certificate was entered on this decision on March 14, 2011.

The Idaho court awarded the Trust fees and costs against Debtor John Hyatt in January 2011 ($2,888.50) and in May 2011 ($674.11).  That court also

---

[8]  Case No. CV 2010-6541.

MEMORANDUM OF DECISION - 6

indicated that additional fees and costs would be awarded under Idaho rules,

however that amount was not liquidated or established before Debtors' bankruptcy

petition was filed.

The Trust relies on the decisions of the Idaho court to establish the

existence and amount of the judgment in Idaho (principal debt of $185,000 plus

"double damages" of $370,000 plus requirement to turnover certain personal

property), and to support calculation of interest and inclusion of specific fee

amounts awarded.  *See* Adv. Doc. No. 10-1 at 2, ¶¶ 1-4; Adv. Doc. No. 10-2 at 2,

6-7.[9]

## B.    Requests for Admission

On July 18, 2011, the Trust propounded discovery on Debtors in this

adversary proceeding.  *See* Adv. Doc. No. 10-3 at 3-4, ¶¶ 10-11 (De Smet

Affidavit); Adv. Doc. Nos. 10-11, 10-12 (Exs. H and I to De Smet Affidavit).  The

discovery included several requests for admission under Civil Rule 36, which rule

is incorporated in bankruptcy adversary proceedings by Bankruptcy Rule 7036.

The Trust's attorney's affidavit avers that Debtors never responded to this

discovery.  *Id.*[10]

---

[9]  The Trust's assertions and arguments about the amount of the judgment liability
include the alleged – but not yet awarded – amount of fees, and an assertion of accrued interest
that has not been adjudicated.  *See*, *e.g.*, Adv. Doc. No. 10-1 at 4, ¶ 13.

[10]  Under Local Bankruptcy Rule 7005.1(a), discovery is to be served on a party, but not
(continued...)

MEMORANDUM OF DECISION - 7

The Trust relies on Debtors' failure to respond to the requests for admission to establish that Debtors admit obtaining Dorothy Hyatt's personal property and the $185,000 by "fraud and false pretenses" and by use of materially false written representations regarding Debtors' finances, and that the property and funds were obtained "while John W. Hyatt was a trustee" of the Trust.  *See* Adv. Doc. No. 10-1 at 3-4, ¶¶ 8-12; Adv. Doc. No. 10-2 at 7-8.

**DISCUSSION AND DISPOSITION**

### A.      Standards on Motions for Summary Judgment

Summary judgment is governed by Civil Rule 56, incorporated by Bankruptcy Rule 7056.  Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment, the evidence, and any inferences therefrom, must be viewed in a light most favorable to the non-moving party.  *Thorian v. Baro Enterprises, LLC (In re Thorian)*, 387 B.R. 50, 61 (Bankr. D. Idaho 2008).  The Court cannot and does not weigh evidence in resolving motions for summary judgment but, rather, determines only whether a material factual dispute exists requiring trial.  *Id.* A dispute is genuine if there is sufficient evidence for a reasonable fact finder to

---

[10](...continued)
filed with the Court.

MEMORANDUM OF DECISION - 8

hold in favor of the non-moving party, and a fact is material if it might affect the outcome of the proceeding. *Boise City/Ada County Housing Auth. v. O'Brien (In re O'Brien)*, 2011 WL 1457304, at *2 (Bankr. D. Idaho April 15, 2011) (citation omitted).

### B.   Disputed and Undisputed Facts

Local Bankruptcy Rule 7056.1, which supplements Civil Rule 56 and Bankruptcy Rule 7056, requires that a motion for summary judgment be accompanied by a separate statement of asserted undisputed facts, setting forth each fact in a separate, numbered paragraph with specific citation to the record. LBR 7056.1(b)(1).  The nonmoving party must respond to each asserted undisputed fact, also by a separate statement and with citation to the record.  LBR 7056.1(b)(2).

Here, after the Trust filed its Summary Judgment Motion and supporting documents, Debtors failed to respond in the manner prescribed by LBR 7056.1 and Civil Rule 56.  However, they did file a "Motion for Dismissal of Summary Judgment with Extreme Prejudice," Adv. Doc. No. 16 (the "Response").[11]  This

---

[11]   Debtors also filed a motion for "Tracing and Forensic Audit" of the Dorothy Hyatt estate (Adv. Doc. No. 13); motions for sanctions under Rule 9011(b) alleging criminal bankruptcy fraud under 18 U.S.C. § 157 and requesting issuance of an order to show cause (Adv. Doc. Nos. 14, 15); an additional motion for sanctions under Rule 9011 for violations of § 362(a) (Adv. Doc. No. 17) and a "Motion for a Full (100%) Claim of Title and Property" of the Dorothy Hyatt estate (Adv. Doc. No. 18), both requesting an order to show cause, together with "exhibits" supporting those motions (Adv. Doc. Nos. 21, 22); and a "Motion For Orders to Turnover all
(continued...)

MEMORANDUM OF DECISION - 9

Response contains assertions of fact in opposition and contradiction to the Trust's

asserted undisputed facts that are derived from the unanswered requests for

admission.  Further, the Response contains a "verification" executed by Debtors,

*id.* at 11, and an "affirmation" of John Hyatt that is subscribed before a notary

public, *id.* at 12-14.  The Response purports to rely on and incorporate numerous

"[e]xhibits filed on 8-11-11."  No such filings exist in the adversary proceeding.

However, in the main chapter 7 case these numerous exhibits appear to have been

filed as attachments to Doc. No. 35, a "Memorandum of Points and Authorities

Presented by Pronouncement . . . ."

Because Debtors are *pro se* litigants, the Court is to "make reasonable

allowances . . . and . . . construe [their] papers and pleadings liberally."  *Kashani v.*

*Fulton (In re Kashani)*, 190 B.R. 875, 883 (9th Cir. BAP 1995).  *See also Woods*

*v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008); *Nilsen v. Neilson (In re Cedar*

*Funding, Inc.)*, 419 B.R. 807, 816 (9th Cir. BAP 2009) (citing *Kashani*). Though

clearly not filed in compliance with the Rules governing motions for summary

judgment, when liberally construed, Debtors' various submissions raise material

fact issues regarding many of the issues underlying the Trust's Summary

Judgment Motion.

---

[11] (...continued)
property and Monies belonging to Debtors" and affidavit in support (Adv. Doc. Nos. 23, 24).
None of these are directly relevant to the Summary Judgment Motion.  Indeed, most are not
relevant to this adversary proceeding and should have been filed in Debtors' chapter 7 case.

MEMORANDUM OF DECISION - 10

While the Court finds that Debtors' noncompliance with the Rules, including LBR 7056.1, is not sufficient grounds for granting summary judgment against them under these circumstances, this does not entirely resolve the issue as the Trust relies on Debtors' deemed "admissions" in advancing its Motion.

### C.      Requests for Admission

Requests for admission under Civil Rule 36 are proper discovery tools in an adversary proceeding.  *See* Bankruptcy Rule 7036.  Here, the requests were part of discovery (including interrogatories and requests for production) served on Debtors on July 18, 2011.  That date was four days after the complaint, Adv. Doc. No. 1, was filed.  The discovery was served the same date that the summons in this action was issued by the Clerk, *see* Adv. Doc. No. 3, and the same date as the complaint and summons were served on Debtors, *see* Adv. Doc. No. 4.

Civil Rule 36 does not establish any restriction on when discovery can first be served in an action, nor do any of the other applicable rules.[12]  Yet the service of discovery on the very day of the issuance and service of the summons and the complaint, to parties who the plaintiff knew, from prior extensive litigation, would be representing themselves, is a questionable approach.

Moreover, on August 16, 2011, Debtors filed an "Emergency Motion for

---

[12]  Certain portions of Civil Rule 26, which include provisions relating to the timing of discovery and "initial disclosures," are made inapplicable in adversary proceedings in this District.  *See* LBR 7026.1.

MEMORANDUM OF DECISION - 11

Continuance to Answer Creditors Complaint and Plaintiff's First Set of

Interrogatories; Request for Production of Documents; and Requests for

Admissions or to Obtain Stipulation of the Same."  Adv. Doc. No. 5.  Although

that matter was never noticed for hearing, the Court addressed the request for an

extension of time to answer the complaint in its Order entered on August 17, Adv.

Doc. No. 6, wherein it granted Debtors an additional 30 days, from the date of the

Order, to file an answer.  The Court's Order did not, however, address the request

to extend the time for Debtors to respond to the discovery requests.

On September 16, 2011, the same date they filed their answer to the

complaint, Debtors filed a "Rejection Notice" regarding the discovery.  Adv. Doc.

No. 8.  Though confusing, and marked by the often strange legal or pseudo-legal

concepts and approaches typical of virtually all Debtors' pleadings and papers,

this document appears to be a general denial of all assertions in the discovery.

This would include, therefore, denial of the requests for admissions.  While not in

the proper form required by Civil Rule 36(a)(4) and (5) for responding or

objecting to requests for admission, the thrust of Debtors' position is clear.

The Court determines that reliance on the unanswered requests for

admissions would be inappropriate under all the circumstances.  Upon

consideration of all matters of record (including Adv. Doc. Nos. 5 and 8) and the

admonition to liberally construe *pro se* filings, the Court concludes that the entry

MEMORANDUM OF DECISION - 12

of summary judgment on the basis that Debtors "admit" fraud and fiduciary

defalcation would be improper.[13]

### D.    Issue Preclusion

The Summary Judgment Motion rests not just on Debtors' purported

"admissions."  The Trust also refers to the underlying state court decisions as a

basis for its nondischargeability claims, thus implicating the principle of issue

preclusion.[14]

Issue preclusion applies in § 523(a) dischargeability proceedings.  *Grogan*

*v. Garner*, 498 U.S. 279, 284 n.11 (1991); *Cal-Micro, Inc. v. Cantrell (In re*

*Cantrell)*, 329 F.3d 1119, 1123 (9th Cir. 2003); *Khaligh v. Hadaegh (In re*

*Khaligh)*, 338 B.R. 817, 824 (9th Cir. BAP 2006).  The doctrine precludes a party

---

[13]  Civil Rule 36(b) provides that, once admitted, a matter "is conclusively established
unless the court, on motion, permits the admission to be withdrawn or amended."  The court may
do so "if it would promote the presentation of the merits of the action and if the court is not
persuaded that it would prejudice the requesting party in maintaining . . . the action on the
merits."  *Id.*  The utility of admissions under the Rule is to facilitate proof with respect to issues
that cannot be eliminated from the case, and to narrow the issues by eliminating those that can be.
"The rule is not to be used . . . in the hope that a party's adversary will simply concede essential
elements."  *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007) (citation omitted).  The
Rule instead serves the dual goals of truth-seeking in litigation and efficiency in dispensing
justice.  *Id.*  Further, the "prejudice" contemplated by this Rule is "not simply that the party who
obtained the admission will now have to convince the factfinder of its truth.  Rather, it relates to
the difficulty the party may face in proving its case, e.g., caused by the unavailability of key
witnesses[.]"  *Id.* (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)).  These
concepts and principles inform the Court's discretion in considering the issues here.

[14]  The doctrine once known as *res judicata* is now called "claim preclusion" and the
doctrine previously characterized as "collateral estoppel" is now termed "issue preclusion."  Since
the matter before the Court is one of nondischargeability of debt in bankruptcy, and since such a
"claim" was not and could not be tried in a prior, nonbankruptcy forum, claim preclusion cannot
apply.  The question is solely one of issue preclusion.

MEMORANDUM OF DECISION - 13

from relitigating an issue he actually litigated and lost in a prior proceeding.
*Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999); *Roussos*

*v. Michaelides (In re Roussos)*, 251 B.R. 86, 92 (9th Cir. BAP 2000).  Issue

preclusion serves to protect litigants from multiple lawsuits, conserve judicial

resources, and encourage reliance on adjudication by reducing the likelihood of

inconsistent judgments.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Determining the issue preclusive effect of a state court judgment in a

subsequent bankruptcy proceeding is determined by the preclusion law of the state

in which the judgment was issued.  *Harmon v. Kobrin (In re Harmon)*, 250 F.3d

1240, 1245 (9th Cir. 2001).  Since here issue preclusion relates to the ruling of the

California court, California preclusion law applies.  That law requires that (i) the

issue to be precluded from relitigation be identical to that decided in the former

proceeding; (ii) the issue was actually litigated in the former proceeding; (iii) the

issue was necessarily decided in the former proceeding; (iv) the decision in the

former proceeding was final and on the merits; and (v) the party against whom

preclusion is sought is the same as or in privity with the party to the former

proceeding.  *Id.* (citing *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990)

(*en banc*)).

The Court has already determined, for purposes of the Stay Motion, that the

California judgment and the resultant Idaho domestication of that judgment are

MEMORANDUM OF DECISION - 14

entitled to full faith and credit, and that the Trust is granted relief to execute on Debtors' Property in satisfaction of that secured judgment. That previous ruling does not, however, necessarily establish that those state court judgments support a determination that the debt represented by those judgments is nondischargeable.

While the Court might, on the present record, conclude that the fourth and fifth issue preclusion elements – a final decision on the merits, and identity of the party against whom preclusion is asserted – are met, issues remain regarding the first three elements. It is incumbent on a party asserting issue preclusion to introduce "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Massie v. Pate (In re Pate)*, 262 B.R. 825, 830 (Bankr. D. Idaho 2001). That did not occur here. While the April 2010 Order did indicate the line of credit funds and personal property were "improperly taken" "without consent," and that John Hyatt "acted in bad faith," the Trust has not shown that the issues raised, tried, and necessarily decided by the California state court action are identical to those presented in this adversary proceeding under

MEMORANDUM OF DECISION - 15

§ 523(a)(2)(A),[15] § 523(a)(2)(B)[16] or § 523(a)(4).[17]  Absent such a showing, it

would be improper for the Court to enter summary judgment based on issue

preclusion.

**CONCLUSION**

      Based on the foregoing, the Trust's Summary Judgment Motion will be

---

[15]  A creditor asserting application of § 523(a)(2)(A) must prove (1) the debtor made representations; (2) that at the time he knew were false; (3) that he made the representations with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on the representations; and (5) that the creditor sustained the alleged loss and damage as a proximate result of the misrepresentations. *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).

[16]  The requirements for a cause of action under § 523(a)(2)(B) are similar to those of § 523(a)(2)(A), but not identical.  To prevail on a § 523(a)(2)(B) claim, a creditor must establish (1) a written representation of fact by the debtor concerning his or an insider's financial condition; (2) that was material; (3) that was made with an intent to deceive; (4) upon which the creditor reasonably relied; and (5) that proximately resulted in damage to the creditor. *Candland v. Ins. Co. of N. Am. (In re Candland)*, 90 F.3d 1466, 1469 (9th Cir. 1996).  In effect, § 523(a)(2)(A) and (B) "target different conduct and are mutually exclusive." *Depue v. Cox (In re Cox)*, 2011 WL 5509205, at *6 n.13 (Bankr. D. Idaho Nov. 10, 2011).

[17]  Debts under this section are nondischargeable if they are "for fraud or defalcation while acting in a fiduciary capacity" or for "embezzlement" or "larceny."  The first clause requires proof that "(1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *Banks v. Gill Distrib. Ctrs., Inc. (In re Banks)*, 263 F.3d 862, 870 (9th Cir. 2001) (citing *Otto v. Niles (In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997)).  In this context, "defalcation" includes the innocent default of a fiduciary who fails to fully account for money or property received. *Id.* (quoting *Lewis v. Scott (In re Scott)*, 97 F.3d 1182, 1186 (9th Cir. 1996)).  The elements needed to establish embezzlement are (1) property rightfully in the possession of a non-owner, (2) the nonowner's appropriation of the property to a use other than that for which it was entrusted, and (3) circumstances indicating fraud. *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991).  Embezzlement does not require the existence of a fiduciary relationship. *Id.*  Nor does larceny, which can be established for § 523(a)(4) purposes by proof that a debtor has wrongfully and with fraudulent intent taken property from its owner. *Rice-Davis v. Clements (In re Rice-Davis)*, 2008 WL 8444807, at *7 (9th Cir. BAP Mar. 11, 2008) (citing *Kaye v. Rose (In re Rose)*, 934 F.3d 901, 903 (7th Cir. 1991)).  But, unlike embezzlement where the initial possession of the property or funds was lawful, larceny requires that the initial possession be wrongful. *Murray v. Woodman (In re Woodman)*, 451 B.R. 31, 38 (Bankr. D. Idaho 2011) (citing *Ormsby v. First Am. Title Co. (In re Ormsby)*, 591 F.3d 1199, 1205 (9th Cir. 2010)).

MEMORANDUM OF DECISION - 16

denied.  The Court will enter an Order accordingly.

DATED: December 13, 2011

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 17